Seney, J.
Tlie city of Toledo is the exclusive owner of what is known as a natural gas plant. As such owner in the operation of said plant, it furnishes natural gas to the public buildings situated in the city of Toledo and also furnishes natural gas to the residents of said city, charging therefor a fixed and certain rate and by such charges realizes quite a sum of money per year for the sole use and benefit of said city. As a part and parcel of said natural gas plant said city owns pipe lines, gas wells,]lumping station, telephone line aud fixtures which are partly located in the townships of Allen and Cass in Hancock county, Ohio. Is the property of said city, thus located in Hancock county, Ohio, subjected to taxation in said county of Hancock, is the question presented by the petition of said city, filed in the court of common pleas of this county and appealed to this court, praying for an injunction to restrain the county treasurer of this county from collecting the taxes assesed upon said property, by the proper and legal autlioriaties of Hancock county.
It is claimed by the city of Toledo that this property is not taxable in Hancock county by virtue of paragraph 8 of section 2782 of the Revised Statutes, as amended March 18, 1891, and found in volume 88 Ohio Laws, page 90, which reads:
"All market houses, public squares, or other public grounds, town or township houses or halls used exclusively for public purposes, and all works, machinery, pipe lines and fixtures belonging to anj' town and used exclusively for conveying water to said town, or for heating or lighting the same. ’ ’
It is further claimed by tire, city that the question here presented has been determined in favor of the city, by the circuit court of the sixth judicial circuit in the case of the city of Toledo v. Yeager, treasurer of Wood county, Ohio.
While this is true, should this court follow that decision?
*259 While we have the utmost respect and regard for the ability and learning of the judges composing that court, their decision is reported and the' reasons given therefor, if those reasons appear to us not sound, it is our duty to say so and let the Supreme Court of the state determine it.
The foundation stone upon which that decision is built is the case of the State ex rel. v. The City of Toledo, and reported in the 48 Ohio St. page 112. The second paragraph of the syllabus reads:
"The supplying of municipal corporations and their citizens with natural gas, is a public use or purpose, for which the taxing power may be constitutionally exercised.”
The force and effect of this decision can be no greater than the facts governing the ease in which the decision was rendered. The only question arising in the case was the constitutional power of the legislature to grant to the city of Toledo the right to assess upon the residents of the city of Toledo in the nature of taxes, the cost and expense of constructing and maintaining the natural gas plant. The constitutional provision that alone applies to the case before us, was not alluded to or commented on by the judge that wrote the opinion. Mark his words on page 188 of the report.
"But to what extent the power of municipal taxation should be restricted so as to prevent the abuse of such power the constitution has not in express terms distinctly prescribed. ” “By a special constitutional restriction, etc., * * * * ” “Nor do we find elsewhere in the constitution any express prohibition that might be construed as restraining the legislature from authorizing municipalities to issue the bonds for the purpose above designated, and impose taxes for their payment. ’ ’
So that the words used in this syllabus "is a public use or purpose,” upon which much stress is laid by the judge rendering the opinion in the sixth circuit, can only apply to tli'e question of raising money by taxation for a public use or purpose, and this does not contravene any provision of the *260 constitution, for the reason that there is no constitutional provision on the subject. But when we come to apply it to property that is claimed exempt from taxation by legislative enactment, and we find a constitutional provision on that subject. “The words public use or purpose” may have an entirely different interpretation in the light of the constitutional provision, so that we hold that the case cited from 48 Ohio St, supra, has no aplication to the question presented in the case before us.
Is this property exempt from taxation by reason of the statute cited? This depends first, whether the legislature under the constitution of the state had the power to enact the section cited, and if it had, whether the property in this action comes within the provision of the section. The article of the constitution on the subject is article XII. section 2, which reads:
“Laws shall be passed taxing by a rmiform rule, all moneys, credits, investments in bonds, stocks, joint stock companies or otherwise, and also all real and personal property, according to the true value in money, but burying grounds, public school houses, houses used exclusively for public worship, institutions of purely public charity, public properly used exclusively for any public purpose, and personal property to an amount not exceeding in value two hundred dollars for each 'individual, may by general laws be exempted from taxation; but all such laws shall be subject to alteration or repeal, and the value of all porperty, so exempted, shall from time to time be ascertained and published as may be directed by law. ’ ’
Is this “ public property used exclusively for any public purpose f ’ It must be conceded that it is public property. Is it used exclusively for any public purpose ? The city use it to supply natural gas to its public buildings. This is no doubt a public purpose; but the city further uses it to supply private parties with natural gas. Is this also in the light, of .this article of the constitution a public purpose? If it is, *261 then the property is used exclusively for a public purpose. If it is not,then the property is partly used for a public purpose, and partly used for a private purpose; then it would not be exclusively used for a public purpose.
The character of the property, its use, public or private, can best be determined by a few authorities which we cite. Cooley on Taxation, page 173, says:
‘ ‘ But a municipal corporation may hold property not for a government purpose, but for the mere convenience of its people, or to supply some need which is commonly supplied by a private corporation, such as water or gas works, and the presumption of an intention to exclude such property from taxation would be very slight, and perhaps could not arise at all on the language of the law. Such property is deemed to be used by the corporation as is in one case, in its social or commercial capacity as a private corporation, and for its own profit. ”
3 Hill Rep. N. Y., page 539, Nelson, Ch. J., says:
“If granted for public purposes exclusively, they belong to the corporate body in its public or municipal character; but if the grant was for the purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchise had been conferred.”
31 Penn. St. 183, Lewis. C. J., says:
“But the contracts which a municipal corporation may make for the purpose of supplying the inhabitants with gaslights in their streets and houses relate to the things of commerce as distinguished in the civil law from the things public wihch are regulated by the sovereign. Such contracts are not made by the municipal corporation by virtue of its power of local severeignty, but in its capacity of a private corporation. The supplying of gas light is no more a duty of sovereignty than the supplying of water. Both these objects may be accomplished through the agency of individual or private corporations, and in very many instances by *262 that means. If this power is granted to a borough or a city, it is a special private franchise made as well for the private emolument and advantage of the city as for the public good. Blending the two powers in one grant does not destroy the clear and well-settled distinction, and the process of separation is not rendered impossible by the confusion. If granted for public purposes exclusively, they belong to the corporate body in its public, political or municipal character. But if the grant was for the purpose of private advantage and emolument. though the public may derive a common benefit therefrom, the corporation quaod hoc is to be regarded as a private company. ’:
88 Penn. St. page 894.
“The supplying of water and gas to a city is not a municipal duty; hence when the city undertakes to do so it. acts not by virtue of any right of sovereignty, but exercises merely the functions of a private corporation.’
48 O. St.. page 135. Dickman. J., says:
(Speaking of the use of natural gas furnished by this natural gas plant) “Nor does their use of it (citizens of Toledo) necessarily imply taxation for the payment of the principal and interest, of the bonds issued by the municipality, as the income derived from the consumption of natural gas might prove fully adequate to such payment.‘
33 O. St., page 336, City of Cincinnati v. Cameron.
“There is a distinction between those powers of a municipal corporation which are governmental or political in their nature, and those which are to be exercised for the management and improvement of pixqjerty. As to the first, t.he municipality represents the state, and its responsibility is governed by the same rules which apply to like delegation of power. As to the second, the municipality represents the pecuniary and proprietary interests of individuals, and within the limits of corporate power, the rales which govern the responsibility of individuals are properly, applicable. ’ ’
Following these authorities we hold that the property involved in this action is not ‘ ‘ public property used exclusively for public purposes,” and not being such, the act of the leg *263 islature in exempting it from taxation is in violation of article XII, section 2, of the constitution of the state, and being' so, said act is unconstitutional and void.
Again:
Article X, section 7, of the constitution, provides as follows :
‘ ‘ The commissioners of counties, the trustees of townships and similar boards, shall have such power of taxation for police purposes as may be prescribed by law.”
The power to assess under this article of the constitution is founded upon the principle of protection of property rights and the benefits derived therefrom. Each tax payer contributes to the support of the sovereingty, and in return receives from the sovereign protection to his property rights', and stich benefit as that protection affords. Taxes upon the one hand, protection and benefit upon the other hand; they travel side by side. The absence of one necessarily causes the failure of the other. The commissioners of the county, the trustees of the township, are the supreme and only authority within their respective counties and townships as to local taxation, subject only to legislative will. The commissioners of a county have no authority or jurisdiction as to local taxation, other than in the county over which they control. The trustees of a township have no authority or jurisdiction as to local taxation other than in the township over which they control. The council of a municipal corporation have no authority or jurisdiction as to local taxation other than in the municipality over which they control.
The gas wells and other property owned by the city of Toledo in the townships of Allen and Cass in Hancock county, receive its sole protection so far as police regulations are concerned at the hands of the taxpayers of these townships as well as the tax payers of Hancock county. Why should this protection be afforded, if the principle upon which this protection can alone be granted, viz: a contribution in the way of taxes by the property protected, is denied ?
*264 No one, will contend that in the face of the article of the constitution cited, the city council of the city of Toledo can directly control, regulate or direct the rate of taxation in these townships or in Hancock comity. That cannot be done directly. Is our constitution like a piece of rubber, elastic that it can be stretched to accomplish the same purpose indirectly!' If the gas wells of the city of Toledo in this comity are exempt from taxation, you take from the tax duplicate of the county property which receives protection, and by so doing increase the taxes upon the other property in the county.
In other words, if the council of the city of Toledo should deem it necessary for the purpose of furnishing natural gas to the citizens of that city, to come into the county of Hancock and purchase its gas wells,to the extent of its purchase, the same council causes the rate of taxation in Hancock ■county to be increased, and thereby indirectly controls the rate of taxation in a foreign jurisdiction. And further, if the purchase of the gas wells was to any great extent, it might thus indirectly destroy the police regulations of the county of Hancock, and bankrupt its treasury. For it'is known, and which courts will take judicial notice of, that what are known as natural gas lands are in value largely in excess of those lands that are simply agricultural in their nature, and that the purchase of the gas right to gas lands decreases the value of the real estate, and makes it that much less valuable for the purpose of taxation.
So that, when the legislature by the enactment of paragraph 8 of section 2782 of the Revised Statutes attempted to exempt gas wells from taxation, and granted the power to a municipality to deal in said gas wells, it thereby gave to the municipality indirectly the power to control taxation in a foreign jurisdiction, which was in violation of article X, section 7 of the constitution of the state. For these reasons there will be a finding for the defendant. The petition will be *265 dismissed, injunction dissolved, plaintiff to pay all costs, judgment for costs, execution awarded, and cause remanded for execution.
C. F. Watts and Ballard & Franlcs, for city.
Theo. Totten and John Poe, for defedant.
Day, J., dissents. Price, J.., concurs.